IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

AMERICAN HALLMARK INSURANCE
COMPANY OF TEXAS,

        Plaintiff,

v.                                                                                                     CV 20-0233 JHR/JFR

ROSENDO MEDINA, SR., individually, and
as Administrator for the ESTATE OF
STEPHANIE MEDINA and the ESTATE OF
J. M., a minor, R. M., JR., a minor,
S. M., JR., a minor, MARGARITO
HERNANDEZ DE LA CRUZ, and
LEOPOLDO MARQUEZ,

        Defendants.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on the Joint Petition for Court Approval of Minors' Settlement [Doc. 37], filed on September 16, 2020. Having 1) appointed Wade Jackson to act as the Guardian *ad Litem* for the minor [Doc. 38], 2) held a joint fairness hearing on April 6, 2021 [Doc. 42], and 3) thoroughly reviewed Mr. Jackson's report and addendum [Docs. 41, 44, 45], the Court finds the settlement is fair to the minors and approves the settlement.

**I.**      **BACKGROUND**

This case arises from a two-vehicle automobile accident that occurred on October 2, 2019. [Doc. 41, p. 1]. Stephanie Medina and Margarito Hernandez De La Cruz were the drivers involved, with Medina and her three children, J.M., R.M., Jr. and S.M., Jr., in one vehicle, and De La Cruz and Leopoldo Marquez in the other vehicle. [*Id.*]. Medina and J.M. were killed. [*Id.* p. 2]. R.M., Jr., S.M., Jr., De La Cruz and Marquez were all injured. [*Id.*].

1

As the result of this accident, R.M., Jr. suffered a pulmonary contusion of the upper lobe of his right lung and contusions from his seat belt. [Doc. 41, p. 3]. R.M., Jr. incurred more than $24,000 in medical bills but has no ongoing medical needs. [*Id.*]. S.M., Jr. suffered a displaced fracture of her left clavicle, a dislocated and fractured left elbow, and a fractured sternum. [*Id.*]. She was hospitalized for two days following the accident and required a surgical insertion of hardware for almost four months. [*Id.*]. S.M. Jr. incurred more than $143,000 in medical bills but has no ongoing medical needs. [*Id.*]. In addition to the physical injuries, both R.M., Jr. and S.M., Jr. suffered the severe emotional trauma of witnessing the deaths of their mother and brother. [*Id.*]. J.M., Jr. and S.M., Jr. are currently living with their grandparents, Michael and Maria Otero, to whom a court has awarded guardianship after their father, Rosendo Media, Sr., passed away unexpectedly in November 2020. [Doc. 41, p. 2].

De La Cruz sustained four fractured vertebrae and associated epidural hematoma and arterial dissection at the site of the trauma and incurred more than $30,000 in medical bills. [Doc. 41, p. 3]. He also lost wages and may need surgery in the future. [*Id.*]. Marquez sustained a nasal fracture, an alveolar ridge fracture, a complex lower lip laceration, and lost consciousness. [Doc. 45, p. 2]. Due to the severity of the alveolar ridge fracture, Marquez lost several teeth and suffered damages to several others. [*Id.*]. Marquez incurred $13,324.70 in total medical bills. [*Id.*].

American Hallmark Insurance Company of Texas insured the Medinas' vehicle, and Progressive Northern Insurance Company insured De La Cruz' vehicle. [Doc. 41, p. 2]. Both insurance policies carried $50,000 per accident bodily injury liability limits. [*Id.*; *see* Doc. 37, p. 2]. It is disputed whether American Hallmark provided additional uninsured/underinsured motorist ("UM/UIM") coverage on the Medinas' vehicle. [*See* Doc. 3, pp. 9-10]. Progressive previously distributed $25,000 to Rosendo Medina Sr. [Doc. 44, p. 1].

American Hallmark initiated this case by filing a complaint seeking declaratory judgment against all Defendants on March 13, 2020. [Doc. 1]. American Hallmark filed an amended complaint on March 24, 2020. [Doc. 3]. Marquez answered on May 19, 2020, and De La Cruz answered on May 20, 2020. [Docs. 11, 13]. American Hallmark filed a motion to dismiss counterclaims raised by Marquez on June 9, 2020. [Doc. 20]. The Medinas did not answer but filed a motion to dismiss this declaratory action for lack of jurisdiction on June 11, 2020. [Doc. 25]. All parties consented to U.S. Magistrate Judge Jerry H. Ritter presiding by June 12, 2020. [Doc. 28].

On July 7, 2020, the parties jointly notified the Court that they tentatively resolved this matter through a global settlement [Doc. 33], and on September 16, 2020, the parties jointly petitioned the Court for approval of the settlement. [Doc. 37].

Upon the parties' joint request, the Court appointed Wade Jackson to act as Guardian *ad Litem* ("GAL"). [Docs. 36, 38]. Mr. Jackson filed his report on March 29, 2021 [Doc. 39], and the Court held a hearing on April 6, 2021, to review the settlement and determine whether it is fair to the injured minors. [Docs. 40, 42]. At the conclusion of the hearing, the Court requested that Mr. Jackson file an addendum to the report indicating whether any pending third-party liens remain and stating the proposed dollar amounts of all distributions from both insurance policies. [Doc. 42]. Mr. Jackson filed his addendums on April 20, 2021 and May 27, 2021. [Docs. 44, 45].

II. **GOVERNING LAW**

The Court's power to appoint a guardian *ad litem* to protect the interests of minor children arises from the text of Federal Rule of Civil Procedure 17(c) which, itself, "flows from the general duty of the court to protect the interests of infants and incompetents in cases before the court." *Garrick v. Weaver*, 888 F.2d 687, 693 (10th Cir. 1989) (citations omitted).[1] Appointment of a

---
[1] While recognizing that the claims at issue here are primarily federal (*Garrick* was a diversity case), as was discussed by Magistrate Judge Vidmar in *Unruh v. James D. Vandever Trucking, Inc.*,, the judiciary in New Mexico generally

3

guardian *ad litem* is appropriate whenever "the interests of the infant and the infant's legal representative diverge[.]" *Id.* (citation omitted). In a setting such as this, the guardian *ad litem's* primary mission is to investigate and advise the Court whether a settlement negotiated by adults should be approved on behalf of a minor who was involved in the negotiations only by representation.

Aided by the guardian *ad litem*, the Court's role is to review any proposed settlement affecting minor children to determine whether the settlement is "fair" and in the "best interests of the minor children." *Unruh v. James D. Vandever Trucking, Inc.*, No. 17-cv-0422 JCH/SMV, 2018 WL 1684328, at *3 (D.N.M. April 6, 2018) (quoted authority omitted). In reviewing the fairness of the settlement, the Court is guided by the following factors:

> (1) whether the settlement terms were fairly and honestly negotiated; (2) whether serious questions of law or fact exist, placing the ultimate outcome of litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of a greater future recovery after protracted and expensive litigation; and (4) whether the settlement is fair and reasonable in its effect.

2018 WL 1684328, at *3–4 (citing *Garcia v. Middle Rio Grande Conservancy Dist.*, 1983-NMCA-047, ¶ 28, 99 N.M. 802, *overruled on other grounds by Montoya v. AKAL Sec., Inc.*, 1992-NMSC-056, 114 N.M. 354; *Garrick v. Weaver*, 888 F.2d 687, 693 (10th Cir. 1989); *Shelton v. Sloan*, 1999-NMCA-048, ¶ 41, 127 N.M. 92; *Jones v. Nuclear Pharm., Inc.*, 741 F.2d 322, 324 (10th Cir. 1984)). If the settlement is not fair to the child or children involved in any respect, it must be rejected. *Id.*

---

bears "a special obligation to see that children are properly represented, not only by their own representatives, but also by the court itself." No. 17-cv-0422 JCH/SMV, 2018 WL 1684328, at *3 (D.N.M. April 6, 2018). The Court is, therefore, guided by both state and federal case law in analyzing the reasonableness of the pertinent settlement and its fairness to the minors.

## III. THE FAIRNESS HEARING

The Court held a fairness hearing on April 6, 2021 via phone with the parties and a court stenographer attending remotely. [Doc. 42]. Meena Allen and William Morison appeared for American Hallmark, Brent Ferrel appeared for the Medinas, Michael Ross appeared for Marquez, David Duhigg appeared for De La Cruz, and Mr. Jackson appeared in his capacity as GAL. [*Id.*, p. 1]. Allen also appeared for Progressive. [*Id.*, p. 2]. R.M., Jr. and S.M., Jr.'s grandfather, Michael Otero, was also present on the line. [*Id.*].

Mr. Jackson presented his report and answered questions. [Doc. 42, p. 2]. Mr. Jackson recommended, and all the parties agreed, that all the settlement payments to the children be placed into two 529 educational plans, one for each of the children. Mr. Jackson recommended the 529 plans over long-term structured settlements because of the low amount of the insurance coverage, the age of the children, and the cost of the structured settlements. The Court asked about the ownership of the 529 savings plans; Mr. Jackson and all parties agreed that Mr. Otero should be the owner of the 529 savings plans. The Court then asked about the limitations and prohibitions regarding withdrawing the funds. Mr. Jackson recommended, and the parties agreed, that Mr. Otero be prohibited from withdrawing the funds except for children's emergency, and that Mr. Otero should distribute the unspent funds to the respective children when they turn 25. Mr. Otero then testified to his understanding and approval of the settlement. [Doc. 42, p. 2].

The Court also asked about third-party liens and exact distribution of proceeds from both insurers. Mr. Ferrel replied that additional time is needed to settle the third-party liens. Ms. Allen sought an addendum on the exact distribution of proceeds from both insurers, which Defendants agreed to provide. The Court allowed additional time to negotiate third-party liens and to prepare

an addendum stating the exact distribution of proceeds from both insurers. [Doc. 42, p. 2]. The Court advised the parties to expect an order regarding the settlement after filing of the addendum.

IV. **ANALYSIS**

The parties jointly petition the Court to approve the settlement reached, resolving all claims and defenses between all parties. [Doc. 37, p. 3]. Mr. Jackson agrees that the settlement reached is favorable to J.M., Jr. and S.N., Jr. and should be approved by this Court. [Docs. 41, p. 4; Doc. 44]. The Court held a joint fairness hearing on April 6, 2021, to review the settlement and determine whether it is fair to the injured children. [Doc. 42]. Based on all the information presented and after analyzing all the relevant *Jones* factors, the Court finds that the settlement is fair to the children and approves the settlement.

The settlement was fairly and honestly negotiated. After American Hallmark filed its complaint, the Medinas filed a motion to dismiss for lack of subject matter jurisdiction. [Doc. 25]. Both insurers tendered their per accident bodily injury liability limits, and Defendants attended a private settlement conference and agreed to allocate the coverage provided in proportion to each party's medical expenses. [Doc. 37, p. 3; Doc. 41, p. 5]. Nothing in the record suggests that the settlement terms reached are unfair or were dishonestly negotiated.

There are also serious questions of law and disputes of fact in this case that placed the ultimate outcome of litigation in doubt. First, there are questions regarding whether the Medinas' vehicle had UM/UIM coverage, whether UM/UIM coverage is applicable, whether the Medinas can recover that coverage despite some Progressive payment, and whether the Medinas can recover if Stephanie Medina is found at fault for the accident. [Doc. 3, p. 10]. Furthermore, Mrs. Medina (the Medina vehicle's driver) died, [Doc. 41, p. 3], resulting in evidentiary complications. Finally, because all surviving parties suffered varied and serious injuries, and De La Cruz may have future

medical needs, [*see* Doc. 41, p. 3], disputes of fact could arise when determining damages. These disputes of law and fact place the ultimate outcome of this litigation in doubt.

The value of immediate and swift recovery through settlement outweighs the possibility of greater future relief through continued litigation. First, there is no mechanism to shift attorney fees if the minor parties prevail, so litigation expenses will reduce what is already a limited recovery. Moreover, both insurers have agreed to pay policy limits, rendering collection of a greater judgment doubtful. [*See* Doc. 37, p. 1]. The parties agreed to allocate the coverage provided by the policy in proportion to each party's medical expenses; S.M., Jr. and R.M., Jr. paid a total of $167,000 in medical bills whereas De La Cruz and Marquez only paid about $43,000. [*See* Doc. 41, p. 3; Doc. 45, p. 2]. Unlike De La Cruz, S.M., Jr. and R.M., Jr. currently do not have future medicals. [*See id.*]. This creates a possibility that the minor beneficiaries' ultimate recovery may be less, even far less, than currently negotiated amount. Although the minors could theoretically increase their recovery through successful litigation of their claims for emotional distress, they can do so only at the expense of trial, both financial and emotional. In sum, the value of immediate recovery outweighs the possibility of greater future relief through continued litigation.

Finally, the settlement is fair and reasonable in its effect. Competing demands for limited insurance funds are resolved in proportion to past medical expenses which also reflect the extent of each injured parties' injuries. [*See* Doc. 41, pp. 3, 5]. The absence of adjustment for potential future medical expenses is likely to the benefit of the minors as De La Cruz may have future medical needs and appears more likely than minors to obtain lost wages. Even though R.M., Jr. and S.M., Jr. had medical liens, they have been waived and will not diminish the negotiated distribution of insurance proceeds. [*See* Doc. 43, pp. 1-2]. Furthermore, the amounts to be distributed to the minors, though not a great deal of money, will provide a tangible benefit through

deposit in a 529 savings plan for future educational expenses. Allowing distribution of unspent funds at age 25 allows each child to retain the benefit of the distribution if their educational plans do not exhaust the funds, but delays distribution long enough to help assure mature decision making. Fortunately, the children do not need early distribution to pay normal living expenses given their grandparents' support. Considering all of the circumstances, the settlement is fair and reasonable in its effect.

V. **CONCLUSION AND ORDER**

Based on all the information presented and after analyzing all the relevant factors, the Court find that the settlement is fair to the minors and approves it. The Court hereby:

1. **grants** the parties' Joint Petition for Court Approval of Minors' Settlement [Doc. 37];
2. **finds** that the settlement of the claims involving the minor children in this matter has been voluntarily agreed to and is fair and reasonable under the circumstances;
3. **approves** the settlement reached between the parties;
4. **orders** coverage provided by the American Hallmark policy be allocated as follows: $4,950 to Michael Otero on behalf of R.M., Jr, and $24,900 to Michael Otero on behalf of S.M., Jr., with other amounts allocated to other parties in accordance with the parties' agreement;
5. **orders** the settlement payments to Mr. Otero on behalf of R.M., Jr. and S.M., Jr. be placed into The Educational Plan, New Mexico's 529 plan;
6. **bars** Mr. Otero from withdrawing the settlement payments before the respective minors turns 25 except for emergency of the respective minors;
7. **orders** Mr. Otero to distribute the unspent funds to the respective minors at age 25; and

8

8. **concludes** that the GAL has completed his duties and he is hereby discharged from any further duties in this matter.

_____
JERRY H. RITTER
U.S. MAGISTRATE JUDGE
*Presiding by Consent*